**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MAXIMO FELIX NUNEZ** | : | |
| | : | |
| **Petitioner,** | : | **3:26-cv-2083** |
| | : | **(JUDGE MARIANI)** |
| **v.** | : | |
| | : | |
| **JESSICA SAGE, WARDEN,** | : | |
| **FCI LEWISBURG** | : | |
| | : | |
| **Respondent.** | : | |

## MEMORANDUM OPINION

## I. BACKGROUND

Petitioner Maximo Felix Nunez ("Petitioner") a citizen of the Dominican Republic and lawful permanent resident of the United States since 1984, filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Doc. 1). Petitioner is detained within the Middle District of Pennsylvania and names as Respondent Jessica Sage, Warden of FCI Lewisburg.

In April 2026, Petitioner filed his first habeas petition with this Court. The Court denied the first petition, finding Petitioner's "claims lack merit, and he has failed to demonstrate that he is entitled to habeas relief at this time." *Nunez v. Sage*, 2026 WL 1760283, at *3 (M.D. Pa. June 18, 2026). The Court held that Petitioner was properly detained under 8 U.S.C. § 1226(a) and found "it is undisputed that Petitioner was provided with a bond hearing before an IJ." *Id.* Because Petitioner did not challenge the

constitutionality of the procedures used by the Immigration Judge ("IJ") in denying bond and instead challenged only the duration of his duration, among many other claims lacking merit, the Court denied the petition.

On July 24, 2026, Petitioner filed a second petition for writ of habeas corpus, mostly raising the same claims the Court previously rejected. (Doc. 1). Like his first petition, Petitioner alleges that his detention violates the Immigration and Nationality Act ("INA") and due process. (Doc. 1). And, as before, he claims that his conditions of confinement at FCI Lewisburg violate the Eighth Amendment and due process and raises additional claims under the Administrative Procedure Act ("APA") and the Americans with Disabilities Act ("ADA"). Petitioner also appears to pursue causes of action under 42 U.S.C. § 1983 and a claim alleging negligence under the Federal Tort Claims Act ("FTCA")—claims that were raised and rejected by the Court in the first petition.

As before, Petitioner has been detained by Respondent since May 5, 2025, and an IJ ordered him removed to the Dominican Republic on January 8, 2026. Petitioner's appeal to the Board of Immigration Appeals ("BIA") remains pending and, accordingly, his order of removal is not final. (Docs. 10-6, 10-7). On April 16, 2026, an IJ denied Petitioner's request for bond, finding that he failed to establish that he was not a danger to the community.[1] (Doc. 10-4).

---

[1] As the Court noted in the prior opinion, Petitioner has numerous criminal arrests and convictions for violent offenses. *Nunez*, 2026 WL 1760283, at *1 n.1. In 1988, he was arrested and convicted of "Robbery – Street-Strongarm" and sentenced to a term of imprisonment for 4 years and six months. (*Id.*). In 1994, Petitioner was arrested for "Resisting [an] Officer." (*Id.*). He was arrested for selling cocaine in 1997 and

Petitioner seeks his immediate release, another bond hearing, or for the Court to issue an order finding that his continued detention violates due process.[2] (Doc. 1). Like the first petition, Petitioner does not challenge the constitutionality of the procedures employed by the IJ during his bond hearing. Rather, he raises nearly identical claims to those raised in the first petition which the Court considered and rejected. Respondent opposes the petition, stating that Petitioner's detention is governed by 8 U.S.C. § 1226(a) and that he has received all proper due process, inclusive of a bond hearing. (Doc. 10).

## II. **STANDARD OF REVIEW**

Absent suspension, the Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). Pursuant to 28 U.S.C. § 2241, a

---

was convicted in 1998. (*Id.*). On April 12, 2007, Petitioner was arrested for Aggravated Assault with a Weapon, though the disposition of these charges is unclear. (*Id.*). On November 9, 2007, Petitioner was arrested for Robbery, Kidnapping, and Homicide, but those charges were later dismissed. (*Id.*). On June 24, 2024, Petitioner was arrested for "Harassing Communications" and "Damage to Property," and those charges appear to remain pending. (*Id.*). In his traverse, Petitioner does not dispute any of these arrests, charges, and dispositions submitted by Respondent. (Doc. 11).

[2] Petitioner submitted additional documents after he filed his traverse, including medical records and a declaration from Dr. Katherine Azaro, M.D., a pediatrician who did not examine Petitioner. (Doc. 13). He also filed what appears to be a supplement to his second petition with exhibits after completion of briefing. (Docs. 11, 12). Dr. Azaro reviewed Petitioner's medical records but notes that Petitioner "is not my patient nor have I conducted a physical exam." (*Id.* at 1). Dr. Azaro concluded that "Mr. Nunez has experienced deterioration in his physical and mental status since detainment" and the "following have contributed to his decline" (a) delayed initiation of GLP-1 therapy and inadequate dosing; (b) inadequate dosing frequency of Gabapentin, following by discontinuation of medicine; (c) failure to provide psychiatric evaluation and medicine; (d) failure to provide adequate counseling services and physical therapy; (e) limited access to family support network; and (g) extremely sedentary lifestyle imposed by incarceration. (*Id.* at 5). She also stated that the continued detention of Petitioner "is jeopardizing Mr. Nunez's physical health and mental wellbeing." (*Id.*).

federal district court may grant a habeas petition where a petitioner's immigration detention is "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Claims brought by immigration detainees seeking relief from their confinement "fall within the core of the writ of habeas corpus." *Trump v. J.G.G.*, 604 U.S. 670, 672 (2025). It is well established that a federal habeas corpus petitioner generally has the burden of proving facts entitling him to a discharge from custody. *Goins v. Brierley*, 464 F.2d 947, 949 (3d Cir. 1972) (citations omitted).

## III. ANALYSIS

Petitioner is detained pursuant to 8 U.S.C. § 1226(a) and it is undisputed that Petitioner was provided with a bond hearing before an IJ, who found him to be a danger to the community. Section 1226(a) provides:

> **(a) Arrest, detention, and release**
> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General—
> (1) may continue to detain the arrested alien; and
> (2) may release the alien on—
> (A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or
> (B) conditional parole; but
> (3) may not provide the alien with work authorization (including an 'employment authorized' endorsement or other appropriate work permit), unless the alien

> is lawfully admitted for permanent residence or otherwise would (without regard to removal proceedings) be provided such authorization.

8 U.S.C. § 1226(a).

To the extent that Petitioner challenges the sixteen-month duration of his civil immigration detention, that claim fails. Duration alone cannot "sustain a due process challenge by a detainee who has been afforded the process contemplated by § 1226(a) and its implementing regulations." *Borbot v. Warden Hudson Cnty. Corr. Facility*, 906 F.3d 274, 277 (3d Cir. 2018). "Unlike § 1226(c) detainees . . . who were detained for prolonged periods without being given any opportunity to apply for release on bond," here Petitioner "was granted meaningful process prior to filing his habeas petition." *Id.* at 279-80. Moreover, even construing the second petition broadly, Petitioner still does not allege any constitutional infirmities with the procedures used by the IJ at the bond hearing.[3] Accordingly, Petitioner is not entitled to any habeas relief because he is lawfully detained under 8 U.S.C. § 1226(a) and he has failed to demonstrate that his detention violates due

---

[3] To the extent Petitioner argues he is not a danger to the community, the Court lacks jurisdiction to review the discretionary determinations of the IJ. *See* 8 U.S.C. § 1226(e) ("No court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole."); *see also Chim v. Tsoukaris*, 2026 WL 1650938, at *3 (D.N.J. June 8, 2026) ("Here, Petitioner's challenge to the IJ's denial of bond based on him being a flight risk is a challenge to the IJ's credibility determinations and weighing of the evidence, which are discretionary determinations beyond the review of this Court.") (citing 8 U.S.C. § 1226(e)). While Petitioner has appealed his removal order, there is no evidence that he exercised his right to challenge the IJ's April 2026 bond determination by appealing to the BIA. *See* 8 C.F.R. §§ 1003.19(f), 1003.38. If Petitioner can demonstrate a material change in circumstances, he may seek a custody redetermination before an IJ, not this Court. *See* 8 C.F.R. § 1003.19(e) ("After an initial bond redetermination, an alien's request for a subsequent bond redetermination shall be made in writing and shall be considered only upon a showing that the alien's circumstances have changed materially since the prior bond redetermination.").

process. *See Gonzalez Hernandez v. Warden*, 2026 WL 1725860, at *1 (M.D. Pa. June 15, 2026) (denying habeas relief where petitioner "already received two bond hearings" under Section 1226(a) and "does not challenge the constitutionality of those determinations themselves").

Petitioner also claims that his conditions of confinement at FCI Lewisburg violate the Eighth Amendment and due process and that staff at FCI Lewisburg are deliberately indifferent to his serious medical needs. (Doc. 1). "The touchstone for the constitutionality of detention is whether conditions of confinement are meant to punish or are 'but an incident of some other legitimate governmental purpose.'" *Hope v. Warden York Cnty. Prison*, 972 F.3d 310, 326 (3d Cir. 2020) (quotations omitted). While Petitioner's allegations are less conclusory than before, the Court agrees with Respondent that Petitioner's allegations of inadequate medical care still provide an insufficient basis for habeas relief because he has not alleged deliberate indifference to his serious medical needs or any other "extreme circumstances" warranting habeas relief. *See Id.* at 329 ("To establish deliberate indifference, Petitioners must show that Government knew of *and disregarded* an excessive risk to their health and safety.") (emphasis in original). Nor does Petitioner allege that, given his serious medical needs, FCI Lewisburg subjected him to punishment in violation of due process. *Id.*

Petitioner does not claim he is not receiving any medical treatment at FCI Lewisburg, and Dr. Azaro—a pediatrician who did not treat or examine Petitioner—acknowledges that

Petitioner has received his insulin as well other medications to manage his Type II diabetes. (Doc. 13 at 2) ("Mr. Nunez informed the staff he needed Ozempic (previously prescribed by his physician but was refused. Prescribed insulin, Glimipride, and Metformin."). While Petitioner does appear to allege that medical staff at Moshannon refused him access to his previously prescribed Ozempic, the record reflects that Petitioner was prescribed Ozempic by medical staff at FCI Lewisburg, although Dr. Azaro believes his dosage is too low. (*Id.*).

Dr. Azaro also documents Petitioner's "history of bipolar disorder and mood regulation" and represents that there is "[n]o evidence of mental health evaluations or medications at FCI Lewisburg," yet she acknowledges that Mr. Nunez did have a mental health screening at FCI Lewisburg. (*Id.* at 3). Based on the record before the Court, it cannot conclude that Petitioner's case constitutes an "extreme case" that warrants habeas relief based on his alleged conditions of confinement at FCI Lewisburg. *Hope*, 972 F.3d at 324. Dr. Azaro does not claim that Petitioner has been denied access to any psychiatric medication by staff at FCI Lewisburg, other than merely stating Petitioner in July 2025 discontinued his Depakote. While it appears that Petitioner's Depakote was discontinued while he was detained at Moshannon Valley 13 months ago, Dr. Azaro's declaration is wholly unclear if the staff at Moshannon or FCI Lewisburg refused to provide the medication, or if Petitioner decided to discontinue. (*Id.*). Moreover, as Dr. Azaro makes clear, she merely reviewed Petitioner's medical records and did not conduct an exam of Petitioner. Under these circumstances, Petitioner has failed to allege facts from which the

Court can infer that medical staff at FCI Lewisburg were deliberately indifferent to his serious medical needs or that the conditions of his confinement at FCI Lewisburg violate the Constitution.

Petitioner's additional claims under the ADA, FTCA, section 1983, and *Bivens* are separate causes of action that fall outside the scope of a § 2241 habeas petition. *See Broussard v. Ebbert*, 2015 WL 6083541, at *2 (M.D. Pa. Oct. 15, 2015) (FTCA and *Bivens* claims "are not cognizable in habeas since they do not challenge the legality or duration of Petitioner's confinement, or the execution of his sentence.") (citing *Leamer v. Fauver*, 288 F.3d 532, 547 (3d Cir. 2002)). Accordingly, the Court will dismiss these claims because they are not cognizable in habeas.

Finally, Petitioner APA claim fails. While certain APA claims may be brought in habeas, *see Thieme v. Warden Fort Dix FCI*, 154 F.4th 115, 123 (3d Cir. 2025), the Court's review of the petition fails to indicate what final agency action, if any, Petitioner complains about, and he has other adequate legal remedies. *See Arias Gudino v. Lowe*, 785 F. Supp. 3d 27, 37 n.3 (M.D. Pa. 2025) (declining to consider APA claims raised in § 2241 habeas petition because "those claims may only be addressed after a final agency action for which there is no other adequate remedy in a court.") (citing 5 U.S.C. § 704). Moreover, Petitioner does not allege sufficient factual material raising a reasonable inference that Respondent violated the APA.

In sum, Petitioner has not satisfied his burden of proving facts entitling him to habeas relief. *See Goins*, 464 F.2d at 949. Upon careful consideration of the petition, the Court finds that Petitioner claims lack merit, and he has failed to demonstrate that he is entitled habeas relief. Accordingly, the Court will deny the petition.

## IV. CONCLUSION

For the foregoing reasons, Petitioner's habeas petition will be denied. A separate Order follows.

Robert D. Mariani
United States District Judge